```
 1                 UNITED STATES DISTRICT COURT

 2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                     SAN FRANCISCO DIVISION

 4   RYAN SLOAN,                        )
                                        )  No.  3:24-CV-07516-EMC
 5            Plaintiff,                )
                                        )
 6   v.                                 )  February 20, 2025
                                        )
 7   VERILY LIFE SCIENCES, LLC,         )
                                        )  Virtual Courtroom 5
 8            Defendant.                )
     _____)  San Francisco, California
 9

10                   TRANSCRIPT OF PROCEEDINGS

11                       (Motion to Dismiss)

12

13      BEFORE THE HONORABLE EDWARD M. CHEN, DISTRICT JUDGE

14

15

16

17

18

19

20

21   COURT REPORTER:         AMANDA M. LeGORE
                             (Reporting Remotely)
22                           RDR, CRR, CRC, FCRR, CACSR
                             U.S. District Court
23                           333 West Broadway, Suite 420
                             San Diego, CA 92101
24                           amanda_legore@casd.uscourts.gov

25   Reported by Stenotype:  Transcribed by Computer
```

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFF:        MELANIE PROCTOR
                               The Ottinger Firm PC
 3                             2108 N. Street, Suite N
                               Sacramento, CA  95816
 4                             (510)977-8443
                               melanie@ottingerlaw.com
 5

 6

 7   FOR THE DEFENDANT:        NIYYAH BARBER
                               Jones Day
 8                             555 South Flower Street, 50th Floor
                               Los Angeles, CA  90071
 9                             (213)243-2547
                               niyyahbarber@jonesday.com
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1             (Thursday, February 20, 2025; 1:35 p.m.)

2

3                        P R O C E E D I N G S

4

5        (Court called into session.)

6        THE COURT: Have a seat, everyone. Thank you.

7        THE CLERK: Calling the case of Sloan versus Verily

8    Life Sciences, LLC, Case Number 24-7516.

9        Counsel, please state your appearance for the record,

10   beginning with the plaintiff.

11       ATTORNEY PROCTOR: Good afternoon, your Honor.

12   Melanie Proctor for Plaintiff Ryan Sloan.

13       THE COURT: All right. Thank you, Ms. Proctor.

14       ATTORNEY BARBER: Good afternoon, your Honor. Niyyah

15   Barber for Defendant Verily Life Sciences.

16       THE COURT: All right. Thank you, Ms. Barber.

17       So the question about -- first question is

18   jurisdiction, we have to address.

19       And, as I understand it, Verily was -- had

20   headquarters or is it -- can I say, its principal place of

21   business in San Francisco, during the alleged events?

22       ATTORNEY BARBER: Yes, your Honor.

23       THE COURT: And then has since moved to Dallas?

24       ATTORNEY BARBER: Yes, your Honor.

25       THE COURT: So there's always a question in the case

1    law, when you look at general jurisdiction, if they have
2    maintained their principal place of business and headquarters
3    in San Francisco, then there would be general jurisdiction,
4    even under the *Daimler* case.
5             ATTORNEY BARBER:  Yes, your Honor.
6             THE COURT:  The question is at what point in time do
7    you measure jurisdiction?  And I understand the Supreme Court
8    hasn't necessarily adjudicated this ultimate question, as far
9    as I know.  But most courts, including the Ninth Circuit, do
10   allow sort of looking back to sort of a reasonable time period.
11   And that is, if it was in -- within some reasonable period of
12   time, jurisdiction -- general jurisdiction would obtain because
13   the headquarters were there, and then they recently moved.  The
14   fact that on the date the complaint was filed does not defeat
15   general jurisdiction, as I understand it.  You can imagine
16   if -- what if it happened one day before.  You know?
17            And I think most courts do look at the circumstances
18   leading up to the date the suit was filed.  And, you know, it's
19   a question of what's a reasonable look-back period or what's a
20   reasonable amount of time; and at what point is the gap, sort
21   of, broken.
22            But in this case, as I understand it, the -- the
23   time -- the difference between the time suit was filed and the
24   time that headquarters was moved to Dallas was within about two
25   years?  Is that about right?

1    ATTORNEY BARBER:  Your Honor, the headquarters moved
2    in July of 2024, and then the complaint was filed in October of
3    2024.
4    THE COURT:  So three months?
5    ATTORNEY BARBER:  Yes, your Honor.
6    THE COURT:  And I think the cases that -- that I'm
7    aware of, that would fall within sort of that so-called
8    reasonable period, that would allow kind of a look-back and,
9    therefore, a basis to find general jurisdiction.
10   But if you have a -- a better argument, I would --
11   I'll let you make that.
12   ATTORNEY BARBER:  Your Honor, we did not brief the
13   issue of look-back period because plaintiff asserted
14   jurisdiction based on specific jurisdiction and the connections
15   between his events and actions that give -- give -- excuse me,
16   had his claims arise happen in -- in California.  And you've
17   denied the -- Verily does not deny it has a headquarters in
18   California.  But just that specific jurisdiction does not
19   issue.
20   We are happy to file any supplemental argument
21   addressing specifically the look-back period, but it has not
22   been addressed by the parties yet.
23   THE COURT:  All right.  What about that?  You seem to
24   emphasize specific jurisdiction.  But I'm sort of curious,
25   because it did strike me that since the headquarters were just

1  recently in San Francisco, why should three months make a
2  difference?
3          ATTORNEY PROCTOR:  We agree, your Honor.  Three
4  months --
5          THE COURT:  If you want, you can remove your mask.
6  It's up to you.
7          ATTORNEY PROCTOR:  We agree, your Honor.  Three months
8  shouldn't make a difference here.
9          And the complaint was filed after a period of
10 administrative exhaustion with the EEOC.  And so that process
11 happened while Verily was headquartered here.
12         So, you know, of course, there is some amount of
13 delay.  But, even then, three months is just not a significant
14 period of time.  And as we briefed, the move to Texas was
15 pretty minimal and nominal in nature.  So we agree that the
16 Court has general jurisdiction.
17         THE COURT:  Well, the question is, since that wasn't
18 really briefed, whether I should give the defendant a chance to
19 brief that question.
20         ATTORNEY BARBER:  We would certainly like a chance to
21 brief it, your Honor.
22         THE COURT:  Okay.
23         Well, let me -- let me go on to the next question.
24 There's -- then there's venue.  You can have jurisdiction but
25 no venue.  And -- but venue does lie under 1391(b)(1), in a

1  judicial district in which any defendant resides, if all of the
2  defendants are residents of the state, in which the defendant
3  is -- in which the district is located.
4         And, here, residency is defined in part C, for many
5  purposes, as any judicial district in which such defendant is
6  subject to the Court's personal jurisdiction with respect to
7  the civil action in question.
8         So it kind of ties back to the jurisdiction question.
9         ATTORNEY PROCTOR:   (Nods head.)
10        THE COURT:   One can make a theoretical argument that
11 venue should be more forward-looking and based on convenience
12 of the parties at the time of the suit.  And I could think of a
13 law review piece on that.  But it seems like the statute is
14 pretty clear.  It sort of ties back.  So if I were to find
15 general jurisdiction, I think we have venue under that
16 1391(b)(1), without having to get into (b)(2), with the
17 "substantial" part of it.  So that briefing on general
18 jurisdiction is maybe important in that sense.
19        So if -- since we're here, let's assume, for a
20 moment -- subject to briefing my final order on that -- that
21 there is jurisdiction.  That would get into sort of the merits
22 of the motion to dismiss.
23        The issue in question is whether the California
24 statutory claims can be brought.  And, generally, I think we're
25 all aware that the California courts have pretty clearly held

1  that the statutes, unless there's a clear legislative intent to
2  the contrary, are limited to the application within the state.
3  There's no extraterritorial application.  Then the question is
4  whether by contract the parties can sort of stipulate to apply
5  California law.
6          And there, Judge Chavez' decision in the case where
7  they extensively analyzed that question.  And that is -- I
8  think the conclusion is that you cannot make the statutes
9  applicable as statutes.  You can maybe agree, as a contract
10 term, what it is.  But if you violate it, it's a violation of
11 the contract, not of the statute.
12         So, technically, the California statutes, I don't
13 think, apply on their own here because -- because of the
14 extraterritorial rule.  And I don't think there's a -- correct
15 me if I'm wrong -- a breach of contract claim, per se, on the
16 basis of those violations.  Is there?
17         ATTORNEY BARBER:  That's correct, your Honor.  There
18 is not a claim for breach of contract.
19         THE COURT:  Okay.  So it seems to me that then leaves
20 the federal claims; the ADA and the Title VII claims.
21         And there's been not a motion to dismiss those for
22 failure to state a claim.  Has there in this particular motion?
23         ATTORNEY BARBER:  There has not.  No, your Honor.
24         THE COURT:  So the issue that then arises is, all
25 right, so we've got some claims here that, at least, have not

1  been dismissed at this point.  But you have (indiscernible)
2  clause.  Correct?  The arbitration clause, I think you would
3  agree, applies to the FMLA claim but not the ADA and Title VII
4  claims?
5           ATTORNEY BARBER:  Yes, your Honor.
6           THE COURT:  The question is, what should we do?
7           And I think -- I know the law is a little bit unclear.
8  There's some suggestion in the recent Supreme Court case that a
9  stay is mandatory.
10          I don't really read the cases as saying that.  I think
11 this stay should be based on the state factors, looking at, you
12 know, judicial economy, how much overlap, et cetera, et cetera.
13          But before I go down that road, I -- I take it -- from
14 the plaintiff's position -- that if I were to find a stay is
15 appropriate, they would simply dismiss the FMLA claim and
16 proceed with the ADA and the Title VII claim?
17          ATTORNEY PROCTOR:  Yes, your Honor.
18          THE COURT:  So it seems like there's some overlap
19 here.  Because the ADA claim, as I understand it, probably
20 turns on the failure -- is it not -- to the -- to extend the
21 FMLA leave or -- maybe you could explain exactly what the ADA
22 claim is here.
23          ATTORNEY PROCTOR:  Yes, your Honor.  It does -- it
24 does turn a little bit on that failure to extend leave.  But
25 it's -- it could be stated more clearly as associational

1  discrimination.  So we would request leave to amend that as
2  well, and clarify.
3          THE COURT:  Well, if the part of the wrongdoing of the
4  ADA was the failure to leave under the FMLA, then there's some
5  overlap there.  Right?  In the transaction and the facts?
6          I was a little unclear, also, exactly what is the
7  EEOC -- the EEOC claim is a retaliation claim for -- for filing
8  an EEOC claim and then being retaliated against?
9          ATTORNEY PROCTOR:  Yes, your Honor.
10         THE COURT:  And was the original -- what was the
11 original EEOC claim?  The complaint says it asks for also
12 associational discrimination because of the mother?  Or what?
13         ATTORNEY PROCTOR:  I believe so, your Honor.
14         THE COURT:  And was in -- I am looking at paragraph
15 56.  It says:
16         "On November 27th, 2023, plaintiff submitted a
17         complaint to the EEOC asserting associational
18         discrimination."
19         ATTORNEY PROCTOR:  Yes.
20         THE COURT:  So although the act of retaliation is kind
21 of separate, the underlying transaction is still kind of tied
22 up.
23         And so it does seem to me that even if a stay is not
24 mandatory, I think, in -- in the exercise of discretion, I
25 would grant the stay, in order to -- for the arbitration to go

1  forward.  Because the Federal Arbitration Act, as well as
2  state -- actually -- arbitration act has a policy in favor of
3  arbitration.  And if a decision by this Court on the merits --
4  at least on some of the factual questions -- might interfere or
5  overlap with what's going on in arbitration, that could
6  undermine the arbitration.  So given that risk, if the
7  plaintiff were to keep the FMLA claim in, I would stay the ADA
8  and the Title VII claims.  You know, unless there's a discrete
9  legal argument that's not tied up in the facts.  But I haven't
10 seen that challenged here.  So --
11         ATTORNEY BARBER:  Your Honor, may I add an update on
12 the arbitration issue?
13         THE COURT:  Yeah.
14         ATTORNEY BARBER:  As we previewed in our case
15 management statement, Verily has filed a demand for
16 arbitration, to recoup the payment of a bonus that was
17 inadvertently paid twice to plaintiff.  So that case would be
18 pending -- that arbitration would be pending in Georgia.  And
19 Verily argues that that also contributes to the practical
20 reasons why arbitration should continue.  That repayment of a
21 bonus is the basis for plaintiff's retaliation claim.  He
22 claims that they only asked for the bonus back because he filed
23 the charge.
24         So the facts there would overlap, and defendant cannot
25 comply with both proceeding with repayment if arbitration goes

1  in its favor.  It can also not comply if there is a retaliation
2  finding there.
3           THE COURT:  So there's an overlap on the retaliation
4  claim because of the bonus, which is the tool of retaliation
5  here is itself being arbitrated?
6           ATTORNEY BARBER:  Yes, your Honor.
7           THE COURT:  So we have two areas of overlap, it sounds
8  like.
9           Now, that arbitration, you say, is in Georgia?
10          ATTORNEY BARBER:  Yes, Marietta, Georgia.
11          THE COURT:  And it has been initiated already?
12          ATTORNEY BARBER:  Yes, your Honor.  We filed and
13 served it.
14          THE COURT:  Then if the FMLA claim were to be
15 arbitrated, would that also be -- where would that be
16 arbitrated?
17          ATTORNEY BARBER:  In Georgia.  The contract
18 contemplates that it will be there.
19          THE COURT:  So that might be in one proceeding or two
20 proceedings?  Or --
21          ATTORNEY BARBER:  We would certainly try to get these
22 together, so they could be efficient there.
23          THE COURT:  So are you suggesting that even if the
24 plaintiff were to drop its FMLA claim, there's still an
25 arbitration ongoing on the bonus, which would --

```
 1              ATTORNEY BARBER:  (Nods head.)
 2              THE COURT:  -- now overlap with the Title VII
 3     retaliation claim?
 4              ATTORNEY BARBER:  Yes, your Honor.
 5              THE COURT:  Well --
 6              ATTORNEY PROCTOR:  First, I would dispute service.
 7     We -- we weren't -- our client has not been served with the
 8     arbitration demand.
 9              Second, I also dispute the characterizations of the
10     bonus as being paid twice and when it was demanded.  And there
11     are other facts that are not before the Court that suggest that
12     it was in fact retaliatory.  And now it's triple compounded
13     with an arbitration demand.
14              So -- but I think none of those issues are something
15     for the Court to rule on right now.  I'm just making a record
16     that we dispute the facts that have been presented to the
17     Court.
18              THE COURT:  Okay.  I can understand your position.
19     You want to preserve your position.  And --
20              ATTORNEY PROCTOR:  Yeah, and I --
21              THE COURT:  It sort of does underscore why they're
22     intertwined here.
23              ATTORNEY PROCTOR:  I would also like to note, your
24     Honor, that I've looked through the employment agreement and
25     the arbitration agreement, and I don't see any choice-of-law
```

1  provision that suggests Georgia is the appropriate venue for
2  that.
3          And, notably, Verily took no steps to comply with
4  Georgia law when it terminated Mr. Sloan's employment.  It did
5  not notify Georgia of the termination in -- ever; which it was
6  required to do, so that he could make a claim for unemployment.
7          So it's now choosing to apply Georgia law when it's
8  convenient, but didn't when there were requests by Mr. Sloan's
9  prior attorneys for Verily to follow the Georgia state law in a
10 way that worked in its favor.
11         THE COURT:  I assume that would be an issue for the
12 arbitrator, though, to decide.  Whoever it is -- whatever
13 adjudicative body it is, got to assign choice of law; whether
14 it's going to be, you know, Georgia law or some other law.  But
15 that's not something I can decide, if it goes to arbitration.
16         Well, we can be practical and say, you know, I think
17 it's obvious that there is general jurisdiction here.
18         And you may not object.  Because if that leads to my
19 decision to find, also, venue but no state, no California
20 direct statutory cause of actions, only leaving for federal
21 cause of action the ADA and Title VII -- of which I would stay,
22 pending the arbitration -- both arbitrations, my suspicion is
23 you would not object to the exercise of this Court's -- or
24 finding personal jurisdiction and exercising jurisdiction since
25 you sort of would get what you want?

1        ATTORNEY BARBER:  That's correct, your Honor.  We
2   would not object to general jurisdiction in that instance.
3        THE COURT:  All right.  Well, that -- that is what I'm
4   going to do.
5        I think, you know -- right? -- if there was an
6   objection, I would give the chance for the parties to brief.
7   But I think it's pretty clear that there's general jurisdiction
8   over the -- over the case law.  Especially when there's only a
9   three-month gap between the move to Dallas and the filing of
10  this case.  And, as you pointed out, there was already EEOC
11  proceedings pending.  So that makes the nexus even tighter.
12       I think under 13 -- I think it's 1391, the venue lies
13  here.  But because of the extraterritorial effect, California
14  statutory claims do not apply but the federal claims do.  But
15  given the arbitration -- possibly two arbitrations given the
16  amount of overlap there is with the -- with the federal claims,
17  it's appropriate for this Court to stay the action.  Not
18  dismiss but to stay the action pending completion or
19  developments in the arbitration setting.  So that's what I'm
20  going to do.
21       ATTORNEY BARBER:  Thank you, your Honor.
22       THE COURT:  I -- I don't know whether -- you know,
23  our -- since I'm not dismissing the case, we do have ADR
24  processes available to you all, if you're interested.  And I
25  think we have one of the best ADR processes in the country

1   here.

2            ATTORNEY PROCTOR:  (Nods head.)

3            THE COURT:  So my question is, are you interested in
4   taking advantage of either ENE mediation, court-sponsored
5   mediation, or settlement conference before a magistrate judge?

6            ATTORNEY BARBER:  We already had an unsuccessful
7   mediation, your Honor, before the EEOC.  And we've discussed
8   with our client that we're not interested at this time.
9   However, we are, of course, open to going back, discussing it
10  with our client to see if anything has changed on that front.
11  But, as of now, that has not been the interest of Verily.

12           THE COURT:  Why don't we do this.  I'll leave it open,
13  since I assumed jurisdiction, staying the case.  But I'll
14  always accommodate the parties if you're interested in one of
15  our ADR processes.  It's low-cost, obviously, and very
16  effective.  And now that I've ruled as I've ruled, each side
17  has a little more information about what is left in this case
18  and what's at stake.  It may make sense to revisit that
19  question.  So I'll just wait to hear from you.

20           If you are interested, you -- even a slight interest,
21  let me know.  Both parties have an interest.  And which form
22  you would like.  Whether it's court-sponsored ENE,
23  court-sponsored mediation, or magistrate judge settlement
24  conference.  I will put it on the -- the wheel for -- for that,
25  if you're interested.

1    ATTORNEY PROCTOR: Mr. Sloan is here, and he just gave
2 me the nod of approval, your Honor.
3    THE COURT: Good. I think it makes a lot of sense. I
4 mean, I don't know how much is at stake at the end of the day.
5 But even if it's arbitration -- especially if it's two
6 arbitrations. I don't know what your budget is. But
7 transaction costs here could easily dwarf what -- what this
8 case could resolve for, it seems to me. So this is a good time
9 to try to see if you can resolve this.
10    ATTORNEY PROCTOR: (Nods head.)
11    THE COURT: And, like I say, we have, I think, one of
12 the best processes in the country for that. So let me know.
13    ATTORNEY PROCTOR: All right.
14    THE COURT: Even the slightest bit of interest, I will
15 take that as a yes.
16    ATTORNEY BARBER: Thank you, your Honor. We'll
17 certainly talk it over.
18    ATTORNEY PROCTOR: Thank you, your Honor.
19    THE COURT: So what I'll do is just put a control
20 date, since I'm not dismissing this case, just to see where
21 you're all at. Maybe nine months out, toward the end of the
22 year, see what's happened.
23    Vickie, can we get a status date?
24    THE CLERK: Yes. Let me give you one. That's in
25 November.

1          THE COURT:  Yeah.  Well, if it's November, it's got to
2   be before November 6th or after November 22nd, I think it is.
3          THE CLERK:  Right.  Let me look at the date here.
4          (Pause, referring.)
5          THE CLERK:  November 4th, at 2:30.
6          THE COURT:  Okay.  Does that work?
7          ATTORNEY PROCTOR:  Yes, your Honor.
8          ATTORNEY BARBER:  Yes, your Honor.
9          THE COURT:  We can do that by Zoom.  Save you travel
10  expense.  All right?
11         ATTORNEY PROCTOR:  Great.
12         THE COURT:  Great.  Thank you, Counsel.
13         ATTORNEY BARBER:  Thank you, your Honor.
14         THE COURT:  Thank you.  Have a nice day.
15         (Conclusion of proceedings at 1:56 p.m.)
16
17                          --oOo--
18
19  I certify, by signing below, that the foregoing is a correct
    stenographic transcript of the oral proceedings had in the
20  above-entitled matter this 26th day of February, 2025.  A
    transcript without an original signature or conformed signature
21  is not certified.  I further certify that the transcript fees
    and format comply with those prescribed by the Court and the
22  Judicial Conference of the United States.
23              /S/ Amanda M. LeGore_____
24       AMANDA M. LeGORE, RDR, CRR, CRC, FCRR, CACSR 14290
25