UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN SLOAN,<br><br>   Plaintiffs,<br><br> v.<br><br>VERILY LIFE SCIENCES LLC,<br><br>   Defendants. | Case No. 24-cv-07516-EMC   (EMC)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR COMPEL ARBITRATION**<br><br>Docket No. 61 |

Plaintiff Ryan Sloan is a former employee of Defendant, Verily Life Sciences, LLC ("Verily"). In his Second Amended Complaint, Plaintiff alleges that after he raised concerns internally about Verily's breaches of HIPAA, Verily retaliated against him in breach of his employment contract. Plaintiff also brings claims for retaliation in violation of Title VII of the Civil Rights Act and violation of the ADA through Association Discrimination. Verily moves to dismiss only Count I, Retaliation in Breach of Contract, or in the alternative, to compel it to arbitration. Having considered the parties' briefs, as well as the oral argument of counsel, the Court hereby **DENIES** the motion to dismiss or compel arbitration.

I.   **FACTUAL & PROCEDURAL BACKGROUND**

Plaintiff is a former high-level sales employee of Defendant Verily, a life-sciences research company owned by Alphabet. Plaintiff was initially employed by Verily's subsidiary Onduo, but

on April 19, 2022 entered into an employment agreement with Verily itself. The employment agreement appears to have consisted of an offer letter, an "At-Will Employment, Confidential Information and Invention Assignment Agreement," (the "At-Will Agreement"), and an Arbitration Agreement. Dkt. No. 1-1. The offer letter included an integration clause stating that the At-Will Agreement, "together with its Exhibit, the Arbitration Agreement for U.S. Employees, and any executed written offer letter between Verily and me, are the entire agreement between Verily and me with respect to the subject matter in such documents." *Id.*

The At-Will Agreement includes a section stating:

> **9.   Employee Handbook and Code of Conduct.** I understand that Verily maintains an Employee Handbook and a Code of Conduct. I understand that as a Verily employee, Verily's Employee Handbook and Code of Conduct, as well as and all of the policies contained within or incorporated by reference into either the Employee Handbook or Code of Conduct apply to me. I agree to read, understand and comply with the policies set forth or incorporated into the Verily Employee Handbook and Code of Conduct.

*Id.*; *see also* Dkt. No. 58 ¶ 32.

The Code of Conduct states in bold text that "VERILY PROHIBITS RETALIATION of any kind against anyone who reports concerns in good faith." Dkt. No. 58 ¶ 25. The Code of Conduct defines retaliation as an "[a]n adverse action that can take various forms, such as threats, mistreatment, harassment, negative performance reviews, demotion, suspension, reduced compensation, denial of benefits, or termination." *Id.* The Code of Conduct states that it is "designed as a roadmap to provide you with guidance on how we expect Veeps [employees] to live the Verily values and make ethical decisions in our leadership and work." Dkt. No. 61-1.

The Employee Handbook likewise "prohibits retaliation." Dkt. No. 50-2 at 19. The Employee Handbook states that its "employment practices, guidelines and policies do not form part of your employment contract/offer letter." Dkt. No. 61 at 5. Further, the Handbook states that "Verily reserves the right to add to, modify, or delete any of its employment practices, guidelines and policies at any time." *Id.*

1    The Handbook also includes a section titled "Legal Agreements," reproduced below. Dkt.
No. 62 at 3. This section lists two documents, a "Confidentiality agreement" and "Code of
Conduct." *Id.* The section states, "You are also bound by Verily's Code of Conduct." *Id.*

**Legal Agreements**

**Confidentiality agreement**

When you joined Verily, you signed an agreement containing various obligations including the requirement to hold confidential information, proprietary information, and trade secrets in strictest confidence. Please reference the terms of your agreement for specifics.

**Code of Conduct**

You are also bound by Verily's Code of Conduct. The Verily Code of Conduct outlines how to protect yourself from possible conflicts and the importance of keeping our proprietary information and trade secrets confidential. We encourage you to review the Verily Code of Conduct carefully.

The 2022 Arbitration Agreement applies to claims "arising out of or related to" "the employment relationship, or the termination of that relationship." Dkt. No. 1-1 at 12. The Arbitration Agreement "does not apply to claims for . . . retaliation." *Id.* The Arbitration Agreement includes a delegation clause stating that "Except as otherwise stated in this Agreement, you and the Company agree that any legal dispute or controversy . . . concerning the scope . . . of this Agreement, shall be resolved" by arbitration. Dkt. No. 28-1.

After Plaintiff raised persistent concerns about Verily's alleged HIPAA violations and its alleged concealment of those violations from its clients, Verily terminated Plaintiff, among other adverse actions. Plaintiff contends that these actions constituted retaliation in violation of his employment contract.

Procedural Background

This is Plaintiff's Second Amended Complaint. The Court previously dismissed Plaintiff's claim for retaliation under California Labor Code Section 1102.5 because he is a Georgia citizen who never worked in California. Dkt. No. 40. In the same order, the Court compelled Plaintiff's claim for FMLA interference to arbitration and stayed Plaintiff's remaining claims for Title VII and ADA violations. *Id.* Verily did not move to arbitrate those claims. Plaintiff chose to dismiss

1   his FMLA claim with prejudice rather than arbitrate it.  Dkt. No. 48.  Plaintiff was subsequently
2   granted leave to amend his complaint to add a claim for "Retaliation in Breach of Contract."  Dkt.
3   No. 56.  Defendant now moves to dismiss this claim, or in the alternative, compel it to arbitration.

## II.     DISCUSSION

The Court begins with Verily's motion to compel arbitration, since if the Breach of Contract claim is arbitrable, it will be for the arbitrator, not the Court, to determine whether a claim has been stated.

### A. Motion to Compel Arbitration

The Federal Arbitration Act "requires courts to compel the arbitration of claims covered by an enforceable arbitration agreement." *Kseniya Godun v. JustAnswer LLC*, 135 F.4th 699, 708 (9th Cir. 2025).  In deciding whether to compel arbitration, a court must determine two "gateway" issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute.  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Arbitration agreements may contain a "delegation clause" that delegates to the arbitrator "gateway questions of arbitrability, such as whether the agreement covers a particular controversy." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022).  However, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *accord Brennan*, 796 F.3d at 1130.  Delegation clauses are thus subject to distinct treatment.

Here, there is no dispute that the parties entered into an arbitration agreement.  Dkt. No. 40.  Plaintiff has not challenged the enforceability of this agreement, and the Court has previously ordered the parties to arbitration.  *Id.*  The only disagreement between the parties is whether Plaintiff's retaliation claim based on breach of contract is covered by the arbitration agreement,

4

1  and whether this question is to be determined by the court or the arbitrator – *i.e.* the scope of the
2  delegation clause.
3     The arbitration agreement contains the following relevant provisions:

   "Except as it otherwise provides, this Agreement applies to any dispute, past, present or future, arising out of or related to Employee's ("you" or "your") employment with verily Life Sciences LLC ("Company") . . . or termination of employment . . . ." Dkt. No. 1-1 ¶ 1.

   "Except as otherwise stated in this Agreement, you and the Company agree that any legal dispute or controversy covered by this Agreement, or arising out of, relating to, or concerning the scope, validity, enforceability, waiver, or breach of this Agreement, shall be resolved by final and binding arbitration . . . ." Dkt. No. 1-1 ¶ 1.

   "This Agreement does not apply to claims for harassment, discrimination, retaliation, workers compensation, state disability insurance or unemployment insurance benefits, or representative actions for civil penalties filed under the California Private Attorneys General Act . . . ." Dkt. No. 1-1 ¶ 4.

   Here, the arbitration agreement contains a provision delegating disputes concerning "scope" of arbitration. Since whether Plaintiff's breach of contract claim is covered by the arbitration clause (and its retaliation exclusion) is a question of scope, the agreement arguably delegates that question to an arbitrator.

   However, the delegation clause itself begins with a caveat that it applies "[e]xcept as otherwise stated in this Agreement." This caveat contemplates that there will be provisions of the agreement to which the delegation clause does not apply. A natural reading of this clause in tandem with paragraph 4, which lists claims excluded from the agreement, suggests those exclusions are not within the scope of the delegation clause. These excluded matters would, under paragraph 4, include claims for retaliation listed therein.

   Defendant argues that this reading causes a chicken-and-egg problem, where a court would have to make a gateway determination pursuant to the delegation clause to determine if claims are excluded from the delegation clause. But the delegation clause includes specific language contemplating exceptions, and it is not so absurd that the parties may not have wanted to delegate arbitrability for claims wholly excluded from the agreement. Thus, it is reasonable to assume the question of what is excluded from the delegation clause is one for the court. This avoids the

5

chicken-and-egg problem and is consistent with the text of the agreement.

At the very least, the language of the agreement does not express a "clear and unmistakable" intent to delegate gateway arbitration questions for "claims for harassment, discrimination, retaliation, workers compensation, state disability insurance or unemployment insurance benefits, or representative actions for civil penalties filed under the California Private Attorneys General Act." Without that "clear and unmistakable" showing, under *First Options of Chicago* and *Brennan,* the Court cannot assume arbitrability of the exception in paragraph 4 was delegated. Thus, in light of this ambiguity and the lack of "clear and unmistakable" intent of the parties to delegate, the Court, not the arbitrator, must determine whether Plaintiff's retaliation claims based on breach of contract falls within the exclusion of paragraph 4.

Defendant argues that the claim does not constitute a "claim[] for . . . retaliation" because (1) retaliation is not a cause of action in itself, (2) because retaliation is not an element of a breach of contract claim, and (3) because the exclusion covers statutory claims but not other causes of action.

Defendant's first argument does not follow. The agreement plainly exempts claims of retaliation and does not limit this exemption to claims based on certain legal theories. It describes the gravamen of the claim, not the legal bases therefor. That there is not a standalone legal cause of action for retaliation is immaterial. Harassment, discrimination, and retaliation — all of which are excluded under paragraph 4 — are claims that are not, in a strict sense, stand-alone claims untied to some legal basis, be it, *e.g.*, Title VII or FEHA, a tort based on public policy, or an express or implied contract. The plain text of paragraph 4 carves out from arbitration claims of harassment, discrimination, and retaliation without regard to the particular legal basis underlying the claim. Defendant's interpretation of the clause would effectively read all such claims out of the exclusion.

Defendant's second argument fairs no better. As Defendant acknowledges, breach is an element of a breach of contract claim, and here the breach alleged here is retaliation, something expressly prohibited by the Code of Conduct, which as explained below, is part of the employment agreement.

Finally, Defendant argues that the exclusion only encompasses statutory claims to retaliation, such as a claim under Cal. Labor Code § 1102.5.  Again, this limitation is nowhere to be found in the actual text of the agreement, and Defendants present no extrinsic evidence that paragraph 4 was so intended.

Accordingly, Plaintiff's retaliation in breach of contract claim falls under the arbitration agreement's exclusion.  Defendant's motion to compel arbitration is therefore **DENIED**.

**B. Motion to Dismiss for Failure to State a Claim**

1. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a cause of action for failure to state a claim for relief.  To overcome a Rule 12(b)(6) motion after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

2. Plaintiff's Retaliation in Breach of Contract Claim

When construing a contract, federal courts look to applicable state law. *Revitch v.*

*DirectTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020). The parties agree that California law controls here. Under California law, a contract is either express or implied. Civ. Code, § 1619. The terms of an express contract are stated in words. Civ. Code, § 1620.

        a.    Express Incorporation

Under California law, "[a] contract may validly include the provisions of a document not physically a part of the basic contract." *Shaw v. Regents of University of California*, 58 Cal.App.4th 44, 54 (Cal. App. 1997). "Where it is clear that a party is assenting to a contract that incorporates other documents by reference, the incorporation is valid — and the terms of the incorporated document are binding — so long as the incorporation is clear and unequivocal, the reference is called to the attention of the other party and he consents thereto, and the terms of the incorporated document are known or easily available to the contracting parties." *River Supply, Inc. v. Oracle Am., Inc.*, No. 3:23-cv-02981-LB, 2023 U.S. Dist. LEXIS 199431, at *25-26 (N.D. Cal. Nov. 6, 2023). To incorporate another document, "the document need not recite that it incorporates another document, so long as it guides the reader to the incorporated document." *Shaw*, 58 Cal.App.4th at 54. While the "mere fact of a hyperlink" is not sufficient to show incorporation, *Rodriguez v. Google LLC*, 2021 U.S. Dist. LEXIS 251626, at *19 (N.D. Cal. Aug. 18, 2021), a hyperlink "embedded within language that references the title of the linked page," suffices, *Brown v. Google LLC*, 685 F. Supp. 3d 909, 930 (N.D. Cal. 2023) (holding that users could have "reasonably concluded" the terms of a hyperlinked page were incorporated because the agreement stated that the hyperlinked page "appli[ed]" to the user).

Here, the At-Will Agreement includes a provision stating that "all of the policies" within the "Employee Handbook or Code of Conduct" "apply to" the employee. Dkt. No. 1-1 at 8. The employee further agreed to "read, understand, and comply" with these policies. *Id.* Both the Employee Handbook and Code of Conduct were hyperlinked in the agreement. *Id.* While the Employee Handbook had language that Verily's "employment practices, guidelines and policies do not form part of your employment contract/offer letter," the Code of Conduct had no such language. In fact, the Employee Handbook describes the Code of Conduct as a "legal agreement" and states that that the employee is "bound by" the Code of Conduct." The Code of Conduct thus

8

1  satisfies the incorporation standard: the Code of Conduct is specifically mentioned in the
2  Agreement, the Code is referred to by Verily as a legal agreement, it is called to the employee's
3  attention that he must read, understand, and comply with the Code (and thus has binding effect),
4  and the terms of the Code are easily available via hyperlink.

5        The existence of an integration clause in the At-Will Employee agreement does not prevent
6  incorporation. Integration clauses generally prohibit evidence extrinsic to the written contract to
7  vary, alter or add to its terms. *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK,
8  2016 U.S. Dist. LEXIS 70594, at *119 (N.D. Cal. May 27, 2016). However, when a contract
9  incorporates another document by reference, that document becomes part of the universe of the
10 "entire agreement"—it is no longer the kind of extrinsic evidence the integration clause excludes.
11 *Id.* (citing *King v. Larsen Realty, Inc.*, 121 Cal. App. 3d 349 (Cal. App. 1981)). Thus, the "entire
12 agreement" clause in the At-Will Agreement does not prevent the incorporation of the Code of
13 Conduct. As the Code of Conduct is incorporated, its prohibition against retaliation constitutes an
14 express term of the contract.

15       b.   Implied Agreement

16       Furthermore, even without a finding of incorporation into the express contract, there is a
17 basis for finding the terms of the Code of Conduct to be part of an implied agreement between the
18 parties. The existence and terms of an implied contract may arise from "a mutual agreement and
19 intent to promise where the agreement and promise have not been expressed in words." *Silva v.*
20 *Providence Hospital of Oakland* 14 Cal.2d 762, 773 (Cal. 1939). Although "[t]here cannot be a
21 valid express contract and an implied contract, each embracing the same subject, but requiring
22 different results," *Faigin v. Signature Grp. Holdings, Inc.*, 211 Cal. App. 4th 726, 739 (Cal. App.
23 2012); *see also Guz v. Bechtel National Inc.*, 24 Cal. 4th 340 (Cal. 2000) ([A]n at-will provision in
24 an express written agreement, signed by the employee, cannot be overcome by proof of an implied
25 contrary understanding."), the existence of a written contract "does not preclude" the existence of
26 an implied term consistent with the express contract. *Faigin*, 211 Cal. App. 4th at 739. "The
27 question whether such an implied-in-fact agreement exists is a factual question for the trier of fact
28 unless the undisputed facts can support only one reasonable conclusion." *Guz.* 24 Cal.4th 317 at

9

336–337.

"In the employment context" in particular, California courts "will not confine themselves to examining the express agreements between the employer and individual employees, but will also look to the employer's policies, practices, and communications in order to discover the contents of an employment contract." *Scott v. Pac. Gas & Elec. Co.*, 11 Cal. 4th 454, 463 (Cal. 1995). The California Supreme Court has held that "the trier of fact can infer an agreement . . . based on the employee's reasonable reliance on the company's personnel manual or policies." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 681 (Cal. 1988). In other words, employee handbooks or policies can create an implied term when employees "had a reasonable expectation that the company would follow its own [] policy." *Id.* "When an employer promulgates formal personnel policies and procedures in handbooks, manuals, and memoranda disseminated to employees, a strong inference may arise that the employer intended workers to rely on these policies as terms and conditions of their employment, and that employees did reasonably so rely." *Guz*, 24 Cal. 4th 317 at 344.

As discussed above, the At-Will Agreement states that "all of the policies" within the "Employee Handbook or Code of Conduct" "apply to" the employee and that the employee agrees to "comply" with these policies. Dkt. No. 1-1 at 8. And again, the Employee Handbook describes the Code of Conduct as a "legal agreement" and states that that the Employee is "bound by" the Code of Conduct." To the extent that the Code of Conduct is not already incorporated into the employment agreement, this language suggests that Code of Conduct's prohibition on retaliation constitutes an implied term of the contract. The parties' expectations were informed by all these statements surrounding the formation of the employment relationship. And since the term of the Code of Conduct, include the prohibition on retaliation, does not conflict with the express terms of the contract (it does not affirmatively sanction retaliation), the express contract does not bar such an implied term. *Faigin*, 211 Cal. App. 4th at 739.

Cases cited by Verily where certain terms have been found not to be implied are clearly distinguishable. These cases involve situations where there is a clear disclaimer of contract inclusion, thus preventing a reasonable expectation of implied inclusion. *See e.g. Thomas Weisel*

10

*Partners LLC v. BNP Paribas,* No. C 07-6198 MHP, 2010 WL 546497, at *8 (N.D. Cal. Feb. 10, 2010) (employee handbook with disclaimer that it was "not intended to in any way create a contract of employment, either express or implied" did not create an implied contract); *Garibaldi v. Bank of Am. Corp.*, 2014 WL 1338563, at *3 (N.D. Cal. Apr. 1, 2014) (employee handbook did not create a contract where it "expressly" stated that it did "not establish enforceable rights, contractual or otherwise...." and that "defendant retained the right to modify, suspend, or terminate the handbook's terms at any time."); *Scheller v. Interstae Realty Mangement*, No. 2:14-CV-0457 MCE KJN, 2014 WL 2918879, at *7 (E.D. Cal. June 24, 2014) (employee handbook with express and unambiguous disclaimer of contractual rights did not confer them). Thus, Verily's statement in the Employee Handbook that its "employment practices, guidelines and policies do not form part of your employment contract/offer letter," negates any reasonable reliance upon the Employee Handbook as part of an implied contract. In contrast, as noted above, the Code of Conduct contains no such explicit disclaimer.

Verily argues that language in the Code of Conduct that it is "designed as a roadmap to provide you with guidance" demonstrates that the Code of Conduct was "merely informational." *Doe v. Bridges to Recovery*, LLC, No. 2:20-CV-348-SVW, 2021 WL 3494635, at *2 (C.D. Cal. May 4, 2021). But Verily also told its employees that the Code of Conduct was a "legal document" that the employee was "bound by." Given this language, the parties could have reasonably expected that the Code of Conduct, with its unequivocal language forbidding retaliation, was part of the employment contract. *See Kashmiri v. Regents of Univ. of California*, 156 Cal. App. 4th 809, 833, 67 Cal. Rptr. 3d 635, 653 (2007) (specific promise not to raise fees reasonably understood as implied contractual term, despite University's "general statements" that fees could be changed).

If there is any further doubt, even if one were to conclude there is conflicting language in Verily's documents, the Court construes the contract against the drafter. *See e.g.*, *Kashmiri*, 156 Cal. App. 4th 809 at 834; *Thomas Weisel*, 2010 WL 546497, at *8. Plaintiff has alleged sufficient facts for a trier of fact to find that the Code of Conduct provided for an implied term of non-retaliation.

11

### III. CONCLUSION

Verily does not dispute that if there were a contractual term for non-retaliation, whether express or implied, Plaintiff has pled sufficient facts to show that Verily retaliated against him in violation of that term. Dkt. No. 61 at 4. The Court therefore finds that Plaintiff has stated a claim for breach of contract. Defendant's motion to dismiss is **DENIED**.

**IT IS SO ORDERED**.

Dated: September 8, 2025

_____
EDWARD M. CHEN
United States District Judge

12